UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| YANIL HENRIQUEZ, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-14710-IT |
| | * | |
| CITY OF LAWRENCE, et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

June 25, 2015

TALWANI, D.J.

I.  Introduction

Plaintiff Yanil Henriquez ("Henriquez") brings this suit against Police Officer Claudio Camacho ("Officer Camacho"), the City of Lawrence (the "City"), and Police Chief John Romero ("Police Chief Romero") arising out of Officer Camacho's arrest of Henriquez on March 3, 2013. Presently before this court are the City's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#22] and Police Chief Romero's Motion to Dismiss Amended Complaint [#24]. For the reasons described herein, both motions are allowed in part and denied in part.

II.  Factual Allegations[1]

Henriquez alleges the following facts in her Amended Complaint [#14]:

On the evening of March 2, 2013, through the early morning of March 3, 2013,

---

[1] For the purposes of a motion to dismiss, the court takes the factual allegations in the complaint as true and construes the facts in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

Henriquez attended a concert in Lawrence, Massachusetts. Am. Compl. ¶ 7. At 1:15 a.m. on March 3, Henriquez exited the concert venue in order to wait to be picked up by her ride. Am. Compl. ¶ 8. Without provocation, Officer Camacho approached Henriquez and told Henriquez that if she did not move off of the steps by the count of three, he would pepper spray her. Am. Compl. ¶ 11. Officer Camacho quickly counted to three and, without providing Henriquez an opportunity to move or respond, pepper sprayed Henriquez in her face and eyes. Am. Compl. ¶ 12. Upon being pepper sprayed, Henriquez instinctively brought her arms and hands to her face and began trying to clear the spray from her eyes. Am. Compl. ¶ 13. Suddenly, without warning or provocation, Office Camacho punched Henriquez on the left side of her face. Am. Compl. ¶ 14. Officer Camacho then grabbed Henriquez by her neck, threw her to the ground, and banged her head against the ground. Am. Compl. ¶¶ 16-18. Henriquez screamed for help. Am. Compl. ¶ 17.

Henriquez then felt herself being picked up off the ground. Am. Compl. ¶ 19. Detective Mejia and Sheriff Sergeant Derrick Beasley handcuffed Henriquez and placed her under arrest. Am. Compl. ¶ 19. As the officers led her to the police cruiser, Henriquez was bleeding profusely from her nose and unable to walk without assistance. Am. Compl. ¶ 22. Henriquez cried out that she was hurt and needed help. Am. Compl. ¶ 24. Despite her cries, the officers did not bring her to a medical facility or offer medical assistance. Am. Compl. ¶ 25. Instead, the officers transported Henriquez to the Police Station, where she was placed in a holding cell for ninety minutes. Am. Compl. ¶ 23. Sergeant Guerrero heard Henriquez's pleas for medical assistance but did not respond. Am. Compl. ¶ 27.

The Lawrence Police Department charged Henriquez with assault and battery on a police officer, resisting arrest, disorderly conduct, and interference with a police officer. Am. Compl. ¶

28. A year and a half later, in September 2014, the Essex County District Attorney's Office dismissed all charges against Henriquez. Am. Compl. ¶ 28.

Prior to March 3, 2013, officers in the Lawrence Police Department, including Officer Camacho, had engaged in prior incidents of excessive force and improper denial of medical care, constituting a "history or pattern" of excessive force and denial of medical care. Am. Compl. ¶¶ 30-35, 44-49. Also prior to March 3, 2013, the City and Police Chief Romero had information and/or were aware of prior complaints against Department officers for excessive force and denial of medical care. Am. Compl. ¶¶ 30, 31, 48. Despite this awareness, the City and Police Chief Romero failed to take steps to investigate, train, discipline, or supervise Department officers regarding the use of force and provision of medical care. Am. Compl. ¶¶ 30-35, 44-50.

III. Discussion

In her Amended Complaint, Henriquez brings claims against the City and Police Chief Romero pursuant to 42 U.S.C. § 1983. Henriquez alleges that the City maintained an unconstitutional policy or custom of failing to train and supervise officers as to the use of force and provision of medical care despite widespread abuses and citizen complaints. Henriquez alleges that Police Chief Romero was deliberately indifferent in failing to train and supervise officers despite his awareness of a history of abuses and citizen complaints. Henriquez also brings state-law claims against the defendants, including claims for violation of the Massachusetts Civil Rights Act ("MCRA") and intentional infliction of emotional distress against Police Chief Romero, as well as claims for false imprisonment and negligent/intentional failure to prove medical care against both Police Chief Romero and the City.[2]

---

[2] Henriquez also brings the above-listed claims against Officer Camacho. Officer Camacho has not brought a motion to dismiss and, accordingly, Henriquez's claims against Officer Camacho are not addressed in this Memorandum and Order.

The City and Police Chief Romero have moved to dismiss certain counts against them pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In resolving such a motion, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The court, however, need not accept the plaintiff's legal conclusions as true. Id.

### A. The City's Motion to Dismiss

#### i. Count II: Section 1983

The City moves to dismiss Count II on the ground that Henriquez fails to allege facts plausibly suggesting that the City maintained an unconstitutional policy or custom under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

To establish municipal liability under § 1983, a plaintiff must demonstrate that "the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." City of Canton v. Harris, 489 U.S. 378, 385 (1989). To prevail, a plaintiff must prove the existence of a municipal "policy or custom" that was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694. Such a custom "must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989). For a failure-to-train claim, only if the "municipality's failure to train its employees in the relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, 489 U.S. at 389. To

4

meet this standard, it is "ordinarily necessary" to show a "pattern of similarly constitutional violations by untrained employees." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011).

While admittedly a close question, this court finds that Henriquez's allegations are sufficient at this stage to state a plausible claim for an unconstitutional policy or custom. Henriquez alleges that Officer Camacho and other officers in the Department engaged in prior incidents of excessive force and denial of medical care constituting a "history or pattern" of such conduct, citizens complained about officers' use of excessive force and denial of medical care, the City was on notice of such complaints, and the City failed to take any action in response to the complaints, including failing to investigate, supervise, discipline, and train the officers. Although Henriquez does not provide many factual details as to the prior incidence of misconduct and prior complaints, she provides more than legal conclusions or a recitation of the elements of the cause of action. See Iqbal, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (internal quotation marks and citation omitted)). Henriquez alleges facts that, taken as true and taken together with the reasonable inferences from those facts, state a plausible claim. Compare Haley v. City of Bos., 657 F.3d 39, 53 (1st Cir. 2011) ("Although couched in general terms, [plaintiff's] allegations contain sufficient factual content to survive a motion to dismiss and open a window for pretrial discovery."), with McElroy v. City of Lowell, 741 F. Supp. 2d 349, 356 (D. Mass. 2010) (dismissing § 1983 claim against the City where plaintiff "point[ed] to no pattern of constitutional violations or any other fact that would allow for the inference that the City had the requisite knowledge of an obvious risk to the constitutional rights of its citizens"). Accordingly, the City's motion to dismiss Count II is denied.

> ii. *Counts V and VII: False Imprisonment and Negligent/Intentional Failure to Provide Medical Assistance*

The City moves to dismiss Count V (False Imprisonment) and the intentional portion of Count VII (Negligent/Intentional Failure to Provide Medical Assistance) on the ground that the City is immune from liability for intentional torts under the Massachusetts Tort Claims Act ("MTCA"). The City does not move to dismiss Henriquez's negligence claim in Count VII.

The MTCA provides a limited waiver of sovereign immunity for certain tort claims against public entities. See Spring v. Geriatric Auth. of Holyoke, 475 N.E.2d 727, 734 (Mass. 1985). Under the MTCA, however, public entities remain immune from "any claim arising out of an intentional tort, including . . . false imprisonment." Mass. Gen. Laws ch. 258, § 10(c). The court will therefore allow the City's motion to dismiss Henriquez's claims against it for false imprisonment and intentional failure to provide medical assistance. Count VII survives as a negligence claim against the City.

### B. *Police Chief Romero's Motion to Dismiss*

> i. *Count II: Section 1983*

Police Chief Romero moves to dismiss Count II on the ground that Henriquez fails to properly plead supervisory liability under § 1983. According to Police Chief Romero, Henriquez fails to plead sufficient factual details to plausibly establish a pattern of prior constitutional violations to which he failed to respond.

Like municipal liability, supervisory liability under § 1983 cannot be predicated on a *respondeat superior* theory. See Monell, 436 U.S. at 691; Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir. 1999). Supervisory liability attaches only if the supervisory official engages in acts or omissions amounting to either "direct participation in the unconstitutional conduct, or . . . condonation or tacit authorization" of that conduct. Whitfield v. Melendez-Rivera, 431 F.3d

1, 14 (1st Cir. 2005). A plaintiff "must show that the official had actual or constructive notice of the constitutional violation." Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011). A plaintiff may meet his burden by proving the existence of "a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 582 (1st Cir. 1994). However, "isolated instances of unconstitutional activity ordinarily are insufficient . . . to show deliberate indifference." Id.

For reasons similar to those stated above in relation to municipal liability, the court finds that Henriquez states a plausible claim for supervisory liability. Henriquez pleads more than conclusory allegations of deliberate indifference. Cf. Soto-Torres v. Fraticelli, 654 F.3d 153, 159 (1st Cir. 2011) (holding that plaintiff failed to allege supervisory liability where plaintiff merely alleged that the supervisor "was the officer in charge" and "participated in or directed the constitutional violations herein"). Rather, Henriquez alleges that officers in the Department engaged in prior instances of excessive force and denial of medical care constituting a "history or pattern" of such conduct; Police Chief Romero was aware of prior complaints against officers in the Department for such conduct; and despite this awareness, Police Chief Romero failed to take any steps to supervise, investigate, train, or discipline the officers. Because Henriquez's factual allegations state a plausible claim, Police Chief Romero's motion to dismiss Count II is denied.

        *ii.*    *Counts III and V: Massachusetts Civil Rights Act and False Imprisonment*

Henriquez consents to dismissal of Counts III and V against Police Chief Romero. See Mem. Opp'n Mot. Dismiss 1 [#31]. Accordingly, Henriquez's claims against Police Chief Romero in Counts III and V are dismissed.

        *iii.*    *Count VI: Intentional Infliction of Emotional Distress*

Police Chief Romero moves to dismiss Count VI on the ground that Henriquez fails to

allege that Police Chief Romero engaged in conduct directed at Henriquez or knew that his conduct was likely to cause emotional distress to Henriquez. Police Chief Romero argues that dismissal is warranted because "there is no allegation that Romero did anything to the plaintiff, or even knew who she was." Mem. Supp. Mot. Dismiss 17 [#25].

To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate (1) "that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct"; (2) "that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community"; (3) "that the actions of the defendant were the cause of the plaintiff's distress"; and (4) "that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man would be expected to endure it." Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976) (internal quotation marks and citations omitted). Physical harm is not a necessary element of a claim for intentional infliction of emotional distress. See Nancy P. v. D'Amato, 517 N.E.2d 824, 827 (Mass. 1988). Nevertheless, "[t]he standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996).

Henriquez does not allege that Police Chief Romero was present for or took part in the events that took place on the evening of March 2, 2013, into the morning of March 3, 2013. Nor does Henriquez allege that Police Chief Romero engaged in any conduct directed at Henriquez. See Nancy P., 517 N.E.2d at 827 ("The focus of [Massachusetts] cases, and of cases elsewhere, dealing with intentional infliction of emotional distress has been on the emotional distress of a person against whom the extreme and outrageous conduct was directed."). Henriquez thus fails to plausibly allege that Police Chief Romero "acted in the targeted and malicious manner that is

8

required to meet the high bar for an [intentional infliction of emotional distress] claim." Rua v. Glodis, 52 F. Supp. 3d 84, 100 (D. Mass. 2014).  Accordingly, Henriquez's claim for intentional infliction of emotional distress against Police Chief Romero is dismissed.

        *iv.    Count VII: Negligent/Intentional Failure to Provide Medical Care*

Police Chief Romero moves to dismiss Count VII on two grounds.  First, he asserts that Henriquez's negligence claim is barred by Mass. Gen. Laws ch. 258, § 2.  Second, he asserts that Henriquez fails to allege facts suggesting that he intentionally failed to provide medical care.

The MTCA shields public employees from personal liability for negligent conduct occurring within the scope of their employment.  See Mass. Gen. Laws ch. 258, § 2 ("[N]o such public employee . . . shall be liable for any injury . . . caused by his negligent or wrongful act or omission while acting within the scope of his office or employment."); Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003).  Because Police Chief Romero's alleged negligence occurred within the scope of his employment, Henriquez's negligence claim against Police Chief Romero in his individual capacity is barred.

Henriquez's claim against Police Chief Romero for intentional failure to provide medical assistance similarly fails.  Henriquez does not allege facts plausibly suggesting that Police Chief Romero intentionally failed to provide medical care to Henriquez.  Henriquez does not, for instance, allege that Police Chief Romero was present during the incident or was otherwise aware that Henriquez needed medical attention.  Accordingly, Count VII is dismissed in its entirety as against Police Chief Romero.

IV.    Conclusion

For the above-stated reasons, the City's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#22] is ALLOWED IN PART and DENIED IN PART.  The City's motion to dismiss

9

Count II (§ 1983) is DENIED.  The City's motion to dismiss Count V (False Imprisonment) and the intentional portion of Count VII (Negligent/Intentional Failure to Provide Medical Assistance) is ALLOWED.  Count VII survives as a negligence claim against the City.  Police Chief Romero's Motion to Dismiss Amended Complaint [#24] is ALLOWED IN PART and DENIED IN PART.  Police Chief Romero's motion to dismiss Count II (§ 1983) is DENIED.  Police Chief Romero's motion to dismiss Count III (MCRA), Count V (False Imprisonment), Count VI (Intentional Infliction of Emotional Distress), and Count VII (Negligent/Intentional Failure to Provide Medical Assistance) is ALLOWED.

    IT IS SO ORDERED.

Date:   June 25, 2015                                                         /s/ Indira Talwani
                                                                                                                    United States District Judge